## CARTER v. McCLAUGHRY.

### (Circuit Court, D. Kansas. December 10, 1900.)

1. JUDGMENTS—RES JUDICATA—HABEAS CORPUS PROCEEDINGS.

    The denial of a writ of habeas corpus by the federal courts of one circuit does not render the questions determined res judicata, so as to preclude their re-examination by the courts of another circuit in subsequent habeas corpus proceedings instituted therein by the same petitioner.

2. HABEAS CORPUS—REVIEW OF JUDGMENT OF COURT—MARTIAL.

    The judgment of a court-martial cannot be reviewed by a civil court on a writ of habeas corpus except as to questions of jurisdiction.

3. COURTS-MARTIAL — CHARGES AND SPECIFICATIONS — EMBEZZLEMENT BY DISBURSING OFFICER.

    In proceedings by a court-martial against an officer of the army, a charge of embezzlement as defined by Rev. St. § 5488, which provides that every disbursing officer who, for any purpose not prescribed by law, transfers or applies any portion of the public money intrusted to him, is deemed guilty of the embezzlement of such money, is supported by a specification which sets forth that the accused was a disbursing officer of the United States, and as such was intrusted with certain public money, which he willfully and knowingly caused to be paid on false accounts, the amounts paid not being due or owing by the United States to the parties to whom the payments were made, as he well knew.

4. SAME—JURISDICTION.

    On the trial of an officer of the army by a court-martial, whether the facts proved constitute a violation of the articles of war as charged is a question the determination of which is within the jurisdiction of the court-martial, and its decision cannot be reviewed by habeas corpus.

5. ARMY—OFFENSES—EMBEZZLEMENT BY DISBURSING OFFICER.

    The offense of embezzlement by a disbursing officer of the United States as defined in Rev. St. § 5488, is broader than that defined in either the first, fourth, or ninth paragraph of the sixtieth article of war, and such offense, at least if not within the narrower definition of the sixtieth article, is punishable under the sixty-second article, which covers all offenses to the prejudice of good order and military discipline, "though not mentioned in the foregoing articles."

**6. COURTS-MARTIAL—LEGALITY OF SENTENCE.**

Under the sixtieth article of war, which defines a number of distinct offenses by persons in the military service, and provides in the concluding clause, which is to be read distributively, for their punishment on conviction by fine or imprisonment, one convicted of two of such offenses on separate charges may be fined on one charge and sentenced to imprisonment on the other; and where a single sentence is pronounced on such conviction, imposing both fine and imprisonment, it will be presumed that the punishment was so distributed between the charges.

**7. SAME.**

The mere fact that the same acts are specified in support of separate charges against an army officer before a court-martial does not destroy the distinctive character of the offenses charged, or constitute the splitting of a single offense into a number of distinct offenses, if different elements enter into each offense which must be proved to warrant a conviction.

**8. SAME—EFFECT OF PARTIAL DISAPPROVAL OF FINDINGS.**

The punishment prescribed by the articles of war to be imposed by a court-martial on a conviction for their violation is attached to the charges, and not to the specifications made thereunder, and the fact that findings of guilty upon certain specifications supporting a charge are set aside by the president, where others are approved, does not affect the validity of the sentence imposed by the court on such charge, or require its diminution.

**9. SAME.**

Where a sentence in gross is imposed by a court-martial upon a conviction on a number of charges, its validity is not affected by the setting aside of the conviction as to some of the charges, provided it is not greater than might have been imposed on the charges supporting which the findings are approved.

Proceedings in habeas corpus for the discharge of Oberlin M. Carter, a military prisoner of the United States, on petition of I. Stanton Carter.

Frank P. Blair and C. H. Grosvenor, for petitioner.

John W. Claus, Deputy Judge Advocate General, for respondent.

Before THAYER, Circuit Judge, and HOOK, District Judge.

HOOK, District Judge. This is a proceeding in habeas corpus. The writ having been allowed, the cause arises on petitioner's demurrer to the return thereto. Oberlin M. Carter, who was a captain in the corps of engineers of the United States army, was tried before a general court-martial which convened at Savannah, Ga., upon 4 charges of violation of the articles of war and 37 specifications thereunder. He was found guilty of the offenses set forth in 16 of the specifications and of the 4 charges which the specifications supported. In accordance with the practice in such tribunals, the court-martial imposed a lumping sentence, and adjudged the accused "to be dismissed from the service of the United States, to suffer a fine of five thousand dollars, to be confined at hard labor at such place as the proper authority may direct for five years, and the crime, punishment, name, and place of abode of the accused to be published in the newspapers in and about the station and in the state from which the accused came or where he usually resides." As required by law, the record of the proceedings before the court-martial was submitted to the president for his action thereon. The president disapproved of the findings of the court-martial as to 12 of the 16 specifications, and approved of the

remainder, and also of the sentence. The action of the president left in force the findings of guilty under the 4 charges and 1 specification supporting each charge; and, although the determination of the court-martial as to 12 of the specifications was set aside, no diminution was made in the punishment that had been imposed. The secretary of war thereupon designated the United States penitentiary at Ft. Leavenworth, Kan., as the place of confinement of the prisoner, and he is now in the custody of the warden of that institution, who is the respondent herein. The entire sentence, excepting the service of the term of imprisonment, has been executed. The relator has been dismissed from the service of the United States, he has paid the fine imposed, and the specified publication has been made.

Prior to Carter's removal to the penitentiary at Ft. Leavenworth, a writ of habeas corpus was obtained in his behalf from the circuit court of the United States for the Southern district of New York. Upon hearing, the writ was dismissed, and he was remanded to the custody of the military authorities. In re Carter, 97 Fed. 496. An appeal from the order dismissing the writ was taken to the circuit court of appeals for the Second circuit, and that court affirmed the judgment of the circuit court. Rose v. Roberts, 40 C. C. A. 199, 99 Fed. 948. A petition for a writ of certiorari to the circuit court of appeals was presented to the supreme court, and was by that court denied. Carter v. Roberts, 176 U. S. 684, 20 Sup. Ct. 1026, 44 L. Ed. 638. At the same time an appeal directly to the supreme court, and also a writ of error, were allowed by a judge of the circuit court, which, upon hearing, were dismissed. Id., 177 U. S. 496, 20 Sup. Ct. 713, 44 L. Ed. 861. The supreme court, in dismissing the appeal and proceeding in error, did not pass upon the questions affecting the validity of the conviction and sentence of Carter, but held that, since an appeal had been prosecuted from the circuit court to the circuit court of appeals, and that court had acted on the whole case, including the constitutional questions connected therewith, the supreme court would not entertain a direct appeal from the circuit court in the same cause; in other words, it was held that a defeated party did not have the right to have his case finally determined in the supreme court and in the circuit court of appeals on independent appeals. Being restrained of his liberty by the respondent pursuant to the sentence of the court-martial as approved by the president and the action of the secretary of war thereon, it is contended in behalf of Carter that his imprisonment is in violation of the constitution of the United States, and is otherwise illegal, and without warrant of law.

At the threshold of the case counsel for respondent interposes the objection that by reason of the aforementioned proceedings in the courts, and the orders and judgments rendered by them respectively, the matters sought to be presented by petitioner are res adjudicata, and that this court is precluded from re-examining them. It is true, the merits of Carter's case as presented were considered by the circuit court for the Southern district of New York and by the circuit court of appeals for the Second circuit, but, while the judgments of those courts are recognized as of highly persuasive authority, they do not amount to res adjudicata, nor prevent a re-examination of the

same questions in a subsequent habeas corpus proceeding. The action of the supreme court was confined to a denial of the application for a writ of certiorari, which is not allowed as a matter of right, and to a dismissal of the appellate proceedings without a consideration of the merits of the case. It is, therefore, the duty of this court to give due consideration to the case presented.

The limited scope of inquiry in a case of this character is well defined by many decisions. A writ of habeas corpus cannot be converted into a proceeding in error. A court to which an application is made for the discharge of one restrained of his liberty pursuant to the judgment and sentence of another court cannot inquire whether the evidence was sufficient to warrant a conviction, nor consider whether, in the progress of the trial, errors were committed by the trial court as to matters within its jurisdiction. In such a case the writ of habeas corpus is, in effect, a collateral attack; and, if the court pronouncing the sentence had jurisdiction of the accused and of the offense for which he was tried, and did not exceed its jurisdiction in the imposition of the sentence, the case is not open to further inquiry. Courts-martial are independent tribunals created by the same authority to which this court owes its existence, and they have as complete power and jurisdiction to judicially determine any cause before them involving offenses under the articles of war as this court has over controversies committed by law to its cognizance. The limitations on the power of this court to inquire into matters connected with the judgments of other civil courts by means of the writ of habeas corpus apply with equal force to the judgments of courts-martial. This consideration is sufficient to eliminate a number of petitioner's objections without further discussion.

The charges preferred against Carter before the court-martial, and of which he was found guilty, were: (1) Conspiracy to defraud the United States, in violation of the sixtieth article of war; (2) causing false and fraudulent claims to be made against the United States, in violation of the sixtieth article of war; (3) conduct unbecoming an officer and a gentleman, in violation of the sixty-first article of war; (4) embezzlement, as defined in section 5488, Rev. St. U. S., in violation of the sixty-second article of war. It is not denied that the court-martial by which Carter was tried had jurisdiction of his person, but it is contended that the finding of guilty under the fourth charge is illegal and void, in that the acts described in the specification supporting the charge are insufficient to constitute the offense, and that they show that the offense, if any was committed, was cognizable under the sixtieth article of war, for the violation of which a less punishment is prescribed than that inflicted; also that the first two charges constitute offenses against the sixtieth article of war, under which the punishment prescribed is fine or imprisonment, in the alternative, but not cumulatively; also that the charges and specifications show that a single act, viz. the drawing of two checks, has been carved up into several distinct and separate crimes, and a punishment assessed on each, and that, therefore, he has been tried more than once for the same offense; also that, when the president disapproved of certain of the findings of the court-martial, there should

have been by some competent authority an appropriate diminution of the sentence as pronounced by that court. No serious contention is made as to the finding of guilty of the third charge if the proceedings as to any of the other charges are upheld.

First, as to the objections connected with the fourth charge,— which is that of embezzlement as defined in section 5488, Rev. St. U. S., in violation of the sixty-second article of war. Section 5488, so far as concerns the contention in question, is as follows:

"Every disbursing officer of the United States who * * * for any purpose not prescribed by law transfers or applies any portion of the public money intrusted to him, is, in every such act, deemed guilty of an embezzlement of the money so * * * transferred or applied."

The sixty-second article of war provides that:

"All crimes not capital, and all disorders and neglects, which officers and soldiers may be guilty of, to the prejudice of good order and military discipline, though not mentioned in the foregoing articles of war, are to be taken cognizance of by a * * * court-martial, * * * and punished at the discretion of such court." Section 1342, Rev. St.

Were the facts set forth in the specification supporting the fourth charge sufficient to constitute the offense charged, and was the conduct described "to the prejudice of good order and military discipline," as required by the sixty-second article of war? The specification set forth that Carter was a disbursing officer of the United States, and that as such officer he was intrusted with certain public money, which he willfully and knowingly caused to be paid on false accounts; the amounts paid not being due or owing from the United States to the parties to whom the payments were made, of which Carter well knew. In my opinion, this charges the application of public money to "a purpose not prescribed by law," and, with the details which the specification supplies, constitutes a sufficient indictment under section 5488 of the Revised Statutes. And it may also reasonably be contended that in a larger sense the misappropriation by a captain in the engineer corps of the army of public money intrusted to him to be used in the construction of works of which he has official charge is conduct prejudicial to good order and military discipline. But, even if petitioner's contention in these respects were well made, it does not show the sentence to be void, but simply that it is erroneous. It was clearly within the province of the court-martial to decide those particular questions,—that is to say, whether the money mentioned was or was not applied to a purpose prescribed by law, and whether such misappropriation, under the particular circumstances of the case, was or was not prejudicial to good order and military discipline, —and its determination thereof, even if erroneous, cannot be reviewed by habeas corpus. In Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787, the court said:

"But the question whether it was or was not a crime within the statute was one which the district court was competent to decide. It was before the court, and within its jurisdiction. * * * Whether an act charged in an indictment is or is not a crime by the law which the court administers (in this case the statute law of the United States) is a question which has to be met at almost every stage of criminal proceedings,—on motions to quash the indictment, on demurrers, on motions to arrest judgment, etc. The court

may err, but it has jurisdiction of the question. If it errs, there is no remedy after final judgment, unless a writ of error lies to some superior court; and no such writ lies in this case."

Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; Ex parte Bigelow, 113 U. S. 328, 5 Sup. Ct. 542, 28 L. Ed. 1005; Swaim v. U. S., 165 U. S. 561, 17 Sup. Ct. 448, 41 L. Ed. 823; In re Boyd, 1 C. C. A. 156, 49 Fed. 48.

It is also contended that under the sixty-second article of war no charge can be preferred that is embraced in any other article, and that, as the charge is that of embezzlement, it is covered by either the first, fourth, or ninth paragraph of the sixtieth article of war. Assuming, but not deciding, that no charge can be laid under the sixty-second article of war if it is mentioned in any preceding article, still it is apparent that the embezzlement defined in section 5488, Rev. St., is not the offense denounced in either the first or fourth paragraph referred to; and I am also of the opinion that it is a species of embezzlement different from that defined in the ninth paragraph of the sixtieth article of war, since the money which is the subject of embezzlement under the latter article is "money furnished for military service," whereas, under section 5488, the term "money" comprehends any public money, whether appropriated for the military service or for other purposes. The offense denounced in section 5488 is much broader and more comprehensive than the other; the former being the application by a disbursing officer of money to any unauthorized purpose, while under the ninth paragraph mentioned the money which is the subject of the embezzlement is money appropriated specifically for the military service; and it is quite probable from the context of the entire paragraph that the term "embezzlement," as there employed, means such an offense as is generally understood where one having the money of another in his custody appropriates it to his own use with felonious intent, intending to deprive the true owner thereof. The result of these conclusions is that the sentence imposed may be upheld by the conviction under the fourth charge alone, since the punishment authorized by the sixty-second article of war is left to the discretion of the court, subject to the review of the president.

But the decision need not be based upon the regularity of the conviction under the fourth charge alone. There was also a conviction under the first charge for a conspiracy to defraud the United States, and a conviction under the second charge for causing false and fraudulent claims to be made; such charges being the subjects of the first and third paragraphs of the sixtieth article of war. I am in entire accord with Judge Wallace, who delivered the opinion of the circuit court of appeals for the Second circuit, that under the sixtieth article it was competent to impose a fine for one charge of which the accused was found guilty and imprisonment for the other. Therefore the entire sentence as ultimately pronounced and confirmed can be sustained under the sixtieth article of war without reference to the sixty-second, and for that reason no relief is possible by the writ of habeas corpus. Every presumption must be indulged in in favor of the judgment of the court-martial, and, even if the conviction under the fourth charge were void, it should be presumed that the fine re-

lates to the conviction under one of the first two charges and the imprisonment under the other. Under the procedure of courts-martial it was not required to be stated that the fine was imposed for conspiracy and the imprisonment for the causing of false and fraudulent claims to be made or vice versa. If the court might have imposed sentence in that manner, it must be presumed that it did so impose it.

Nor is the contention well made that Carter committed but one offense, which has been split up into several charges, and punishment inflicted therefor. A "conspiracy to defraud," as alleged in the first charge, and "causing false and fraudulent claims to be made," as alleged in the second charge, and "the statutory embezzlement under section 5488," as alleged in the fourth charge, are separate and distinct offenses, dependent upon different facts, and requiring different proof; and therefore it cannot be said that for the same act the accused has been tried and punished three times. The mere fact that certain acts of the accused are set out in all of the specifications supporting the three charges does not destroy the distinctive character of the offenses charged.

It is also contended that, since Carter was found guilty under 16 specifications, and upon review thereof by the president 12 were set aside, but no change was made in the sentence imposed by the court-martial, the sentence is void. The punishment prescribed by the articles of war is attached to the charges, and not to the specifications made thereunder, the latter being merely by way of exemplification and detailed statement of the principal charges to which they respectively relate; but, even if this were not so, the rule is well established that, where a sentence in gross is pronounced upon a conviction under an indictment containing several counts, and upon appeal or review some of them are held bad and the others are sustained, the sentence will not be disturbed provided it is such as could lawfully have been imposed under the counts which are upheld. Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 939, 38 L. Ed. 830; Claassen v. U. S., 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966; Haynes v. U. S., 42 C. C. A. 34, 101 Fed. 817; Jewett v. U. S., 41 C. C. A. 88, 100 Fed. 832; Peters v. U. S., 36 C. C. A. 105, 94 Fed. 127. In this case what was confirmed by the president is sufficient, under the law, to justify the punishment inflicted. This disposes of all of the objections that merit consideration. The writ of habeas corpus will therefore be dismissed, and the petitioner, Oberlin M. Carter, is remanded to the custody of the respondent.

THAYER, Circuit Judge. I concur in the foregoing opinion.